**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------X

In Re:                                                      CHAPTER 13

Michael Joseph Konowicz

 a/k/a Michael Konowicz

                                                            Case No. 11-41621(MBK)


                             Debtor.
---------------------------------------------------------X
APPEARANCES:

Kirsten B. Ennis, Esq.
Kirsten B. Ennis LLC
92 East Main St., Suite 407
Somerville, NJ 08876
Attorney for Debtor

Steven K. Eisenberg, Esq.
Stern & Eisenberg
The Pavilion, Suite 410
Jenkintown, PA  19046
         -and-
Gilbert B. Weisman, Esq.
William A. McNeal, Esq.
Becket & Lee LLP
16 General Warren Blvd.
P.O. Box 3001
Malvern, PA 19355
Attorneys for Creditor, American Express Bank, FSB

Albert Russo
Standing Chapter 13 Trustee
CN 4853
Trenton, NJ 08650-4853


**MEMORANDUM DECISION**

**MICHAEL B. KAPLAN, U.S.B.J.**

  **I.**  **INTRODUCTION**

  This matter comes before the Court on a confirmation hearing filed by the Debtor, Michael Joseph Konowicz ("Debtor") with respect to the Debtor's proposed Chapter 13 Plan ("Plan"). American Express Bank, FSB ("American Express"), a creditor of the Debtor, filed an Objection to Confirmation, raising three points: (1) the Debtor is not devoting his entire disposable income to fund the Plan, (2) the Debtor has filed his Plan in bad faith, and (3) Debtor's failure to increase his proposed plan payment upon repayment of his 26 U.S.C § 401(k) loan warrants denial of the Plan's confirmation. The Court heard oral argument in this matter on April 24, 2012, and denied confirmation predicated on the Court's determination both that the Debtor has not devoted all of his disposable income towards funding his Plan, as required under 11 U.S.C. §1325 (b)(1)(B), and that the Plan has not been filed in good faith consistent with 11 U.S.C. §1325(a)(3). The Court takes this opportunity to expand upon its reasoning in denying confirmation of the Plan.

  **II.**  **JURISDICTION**

  The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(L). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

### III. RELEVANT PROCEDURAL HISTORY

On October 31, 2011, Debtor filed a voluntary petition under Chapter 13, Title 11 of the United States Code, and relief was ordered thereon. According to Schedule I, the Debtor reports monthly gross income of $16,266.00 and monthly net income of $10,050.54, none of which is income from Social Security. Schedule J reports monthly expenses of $9,444.42, leaving a monthly excess of $606.12. The Debtor's Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (hereafter "Form 22C") reports a monthly disposable income of $952.59. The Debtor's annualized current monthly income is above the applicable state median figure and thus, the applicable commitment period is sixty (60) months.

On December 22, 2011, American Express timely filed a general unsecured proof of claim against the Debtor's estate in bankruptcy in the amount of $42,934.40 for the unpaid pre-petition balance due on Debtor's credit card account (account number xxxx-xxxxxx-x2006). The claim was designated as Claim Number 14 on the Court's Claims Register. On January 17, 2012, American Express timely filed a general unsecured proof of claim against the Debtor's estate in bankruptcy in the amount of $7,943.59 for the unpaid pre-petition balance due on Debtor's credit card account (account number xxxx-xxxxxx-x1006). The claim was designated as Claim Number 17 on the Court's Claims Register.

On October 31, 2011, Debtor filed his proposed Chapter 13 Plan (Docket No. 2), in which he proposed to pay monthly payments of $605.00 for sixty months, yielding a 10 percent distribution to general unsecured creditors. Net of the estimated Chapter 13 Trustee's fee, Debtor's Plan proposes to distribute $1,500.00 in attorney's fees and $13,359.43 to satisfy the claim secured by his 2005 Jaguar. On December 29, 2011, American Express objected to the confirmation of Debtor's proposed plan. On February 28, 2012, upon appearances, the Court requested briefs and scheduled the matter for hearing on April 24, 2012.

## IV. DISCUSSION

In order to confirm a Chapter 13 plan over an objection raised by either the trustee or the holder of an unsecured claim, a debtor must pay in full each allowed unsecured claim, 11 U.S.C. § 1325(b)(1)(A), or devote to the plan all *projected* disposable income to be received during the applicable commitment period, 11 U.S.C. § 1325(b)(1)(B). See 11 U.S.C. § 1325(b)(1)(A); and (b)(1)(B). The Bankruptcy Code defines explicitly disposable income as current monthly income, itself further defined in the Bankruptcy Code (*see* 11 U.S.C. § 101(10A)), less amounts that are reasonably necessary to be expended for a debtor's support, for a debtor's dependent's support, and for other enumerated expenses not germane to this matter. 11 U.S.C. § 1325(b)(2). If a debtor's current monthly income exceeds the median family income of his state, such as in the instant matter,[2] 11 U.S.C. § 1325(b)(3) mandates that the reasonableness of the expenditure amounts is "determined in accordance with" 11 U.S.C. §§ 707(b)(2)(A) and (B). The latter statute provides that allowable expenses are determined under the National, Local, and Other Necessary Expenses, issued by the Internal Revenue Service.

### A. The Court Determines that Debtor's Housing Expenses are Impermissibly Excessive and Not Reasonably Necessary.

An amount to be expended for a debtor's support, for a debtor's dependent's support, or for other enumerated expenses must be, as a threshold matter, "reasonably necessary." 11 U.S.C. § 1325(b)(2). The statute clearly requires that such determination of reasonable necessity be made "in accordance with" 11 U.S.C. §§ 707(b)(2)(A) and (B). The allowed expense for a debtor's housing is set forth in the Internal Revenue Service's ("IRS") Local Standards ("Standards"). 11 U.S.C. § 707(b)(2)(A)(ii)(I). In the instant matter, the parties acknowledge that the applicable IRS Local Standard for monthly housing expenses for a household size of one in Burlington County, New Jersey, is $1,125.00. This Court views these Standards as the starting

---

[2] Commonly referenced as an "above median debtor".

4

points in any determination as to whether the expenses are reasonably necessary, and that any permitted deviation from the Standards should be limited to situations where either the code or equity mandates greater flexibility.  As the United States Supreme Court expressed recently, "[a]lthough the expense amounts in the Standards apply only if the debtor incurs the relevant expense, the debtor's out-of-pocket cost may well not control the amount of the deduction.  If a debtor's actual expenses exceed the amounts listed in the tables, for example, the debtor may claim an allowance only for the specified sum, rather than for his real expenditures." Ransom v. FIA Card Servs., N.A., 131 S. Ct. 716, 727 (2011), aff'g In re Ransom, 577 F.3d 1026 (9th Cir. 2009).

Significantly, while 11 U.S.C. § 1325(b)(3) requires that the determination of whether an expense is reasonably necessary be made in accordance with 11 U.S.C. §§ 707(b)(2)(A) and (B), this does not obviate the Bankruptcy Code's threshold requirement, in 11 U.S.C. § 1325(b)(3), that the amount of an expense be reasonably necessary.  Ransom, N.A., 131 S. Ct. at 725-26 (2011) (observing that "Congress intended the means test to approximate the debtor's reasonable expenditures on *essential* items") (emphasis added).  As the record reflects, the Debtor's residence (which, based on the information provided in his Schedules and Form 22C, he occupies alone) is 6,100 square feet and has five bedrooms, as well as numerous luxury features such as 300-plus bottle wine cellar, a second kitchen, a pool table room, and a heated pool. Moreover, the Debtor's Form 22C includes deducted expenses for electricity, heating fuel, sewer/water, and home maintenance totaling $880.00, which is nearly double the local standard for non-mortgage housing utilities of $491.00.

Section 707(b)(2)(A)(ii) provides for certain statutory "safety-nets" which expand the permitted deductions, over and above the applicable Standards, in several situations. For example, §707(b)(2)(A)(ii)(I) permits an additional allowance of up to 5% of the food and

clothing categories where reasonably necessary. Similarly, §707(b)(2)(A)(ii)(II) authorizes the deduction of actual expenses, which are reasonably necessary for the care and support of elderly, chronically ill or disabled household or family members. Likewise, as pertinent to the case at bar, §707(b)(2)(A)(ii)(V) provides for an additional allowance for housing and utilities in excess of the amounts specified in the Standards, based upon the actual expenses for home energy costs. The burden rests, however, upon the debtor to offer sufficient documentation to evidence that all such expenses are reasonably necessary. The Debtor has neither sought, nor proved that that any such additional allowances under §707(b)(2)(A)(ii) are warranted.

A debtor may also seek to establish "special circumstances" under §707(b)(2)(B) which provides that there may exist "special circumstances" sufficient to "justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. §707(b)(2)(B)(i). The statute identifies two examples of "special circumstances:" a serious medical condition or a call or order to active duty in the Armed Forces. §707(b)(2)(B)(i). For this provision to apply, a debtor must satisfy several procedural and substantive requirements. The procedural requirements are set forth in § 707(b)(2)(B)(ii), (iii), and (iv), and they require a debtor (1) to "itemize" each additional expense or income adjustment by setting forth the nature of the suggested adjustment, its amount, and its impact on the debtor's finances and the means test calculation; (2) to provide "documentation" of the additional expense or income adjustment; (3) to provide a "detailed explanation" of the "special circumstances" that make the additional expense or income adjustment "necessary and reasonable;" and (4) to "attest under oath" to the accuracy of the information the debtor provides. In re Pageau, 383 B.R. 221, 225 (Bankr. D.N.H. 2008); In re Haman, 366 B.R. 307, 312 (Bankr. D. Del. 2007).

Courts generally agree that the statute's examples of "special circumstances" are non-exclusive and merely illustrative. Pageau, 383 B.R. at 226; In re Lenton, 358 B.R. 651, 661 n.22

(Bankr. E.D. Pa. 2006), appeal dismissed, 2009 WL 1872667 (E.D. Pa. Jun. 29, 2009). However, courts are divided in their views regarding the scope of the "special circumstances" provision. By way of example, the court in In re Martin, 371 B.R. 347 (Bankr. C.D.Ill. 2007) held that "special circumstances" should be construed as "uncommon, unusual, exceptional, distinct, peculiar, particular, additional or extra factors or conditions . . ." Martin, 371 B. R. at 352; see also In re Haar, 360 B.R. 759, 760 (Bankr. N.D. Ohio 2007) (providing that Congress intended "to set this bar extremely high, placing it effectively off limits for most debtors"). In contrast, other courts have applied a more liberal interpretation of "special circumstance" and thus do not require the situation to be extraordinary, outside of the debtor's control, or always unanticipated. In re Fonash, 401 B.R. 143, 146 (noting the "burden to establish special circumstances was not set particularly high, making the presumption truly rebuttable. The standard . . . is special, not extraordinary."); see also In re Crego, 387 B.R. 225, 228 (Bankr. E.D. Wis. 2008) (pointing out that "special circumstances" is not worded as harshly as other exceptions or limitations under the Bankruptcy Code, including section 523(a)(8) related to undue hardship). This Court need not enter the interpretive fray in this matter since the Debtor has not alleged any such special circumstances which support the excessive housing expenses; by way of illustration and not intended as an exhaustive list, the Debtor does not contend that retention of his home is reasonably necessary to address the needs of small children, elderly or ill parents, anticipated sale of the home, special education requirements, limited avoidability of comparable housing, or commuting hardships.

The Court further notes that with a negative equity of $375,000.00 (Mortgage debt of $800,000.00 less property value of $425,000.00) the Debtor is unlikely to ever achieve any significant equity in the property, and thus, continuing to pay a mortgage of $5,857.13 at the expense of his unsecured creditors is irresponsible, reckless and unreasonable. Indeed, the

Debtor's $5,857.14 monthly housing expense exceeds the allowed amount under the Standards by $4,732.14. This excess should be added back to the Debtor's disposable income to result in a projected disposable income that he must pay into his plan of $5,684.73,[3] an amount more than sufficient to pay all of the Debtor's currently proposed payments, as well as provide a distribution of 100 percent to all of the general unsecured creditors currently reported on the Debtor's Schedule F.

### B. The Court Determines that the Debtor's Plan Has Not been Proposed in Good Faith.

A plan may not be confirmed if it has not been proposed in good faith. 11 U.S.C. § 1325(a)(3). "The totality of the circumstances should be considered in assessing good faith in the context of a chapter 13 case." In re Buccolo, 397 B.R. 527, 529 (Bankr. D.N.J. 2008). The Third Circuit, adopting factors utilized by other circuits, includes among its good faith factors "the debtor's treatment of creditors both before and after the petition was filed." In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996) (quoting and citing with approval In re Love, 957 F.2d 1350, 1357 (7th Cir. 1992). "This court agrees with those decisions holding that § 1325(a)(3)'s good faith test is an independent authority for examining economic components of a proposed plan, even where the disposable income test is satisfied." In re Amos, 452 B.R. 886, 893 (Bankr. D.N.J. 2011) (finding impermissible, for, *inter alia*, lack of good faith, a chapter 13 plan that proposes to discharge over $75,000 in unsecured debt while paying more than $2,500 per month towards nonessential real property).

In the case at bar, the Debtor's Form 22C and Schedule J proposes that the Debtor pay $5,857.14 per month for his housing expense to retain real property valued at $425,000.00 and securing debts totaling $800,000.00, while providing for a distribution of just 10 percent to his

---

[3] This amount of $5,684.73 is the sum of the Debtor's excess housing deduction ($5,857.14 minus $1,125.00 equals $4,732.14) added to his disposable income as depicted on his Form 22C, $952.59.

general unsecured creditors. Furthermore, the Debtor's Schedule J and Form 22C indicate that the Debtor will pay a total of $351,428.40 for his housing expense over the applicable commitment period, while repaying only $17,810.57 to his unsecured creditors. The unmarried Debtor reports no dependents and has a monthly gross income of $16,266.00, according to his Schedule I, and an annualized income of $181,214.76, according to Form 22C. Nevertheless, the Debtor proposes a Chapter 13 Plan in which he retains a 6,100 square foot house with five bedrooms (in which he lives alone, and in which he holds no equity), while making monthly payments of $5,857.14 and providing a distribution of only 10 percent to his general unsecured creditors. The inescapable conclusion is that the Debtor has not proposed his plan in good faith and confirmation is denied.[4]

### V. CONCLUSION

As the Debtor fails to devote all of his projected disposable income to his proposed Chapter 13 plan, and to show that his Plan is proposed in good faith, this Court denies confirmation thereof.

Dated May 16, 2012

_Michael B. Kaplan_
Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[4] While it is unnecessary to address American Express' third objection relative to the Debtor's failure to increase distributions to creditors upon repayment of his 401(k) loan, the Court finds persuasive the Sixth Circuit Bankruptcy Appellate Panel's decision in In re Seafurt, 437 B.R. 204 (6th Cir. B.A.P. 2010) in which the Panel noted "[b]ecause repayment of a 401(k) loan during the life of the plan can be reasonably anticipated at the time of confirmation, the Panel concludes that post-petition income which becomes available after 401(k) loans are repaid must be considered as projected disposable income available to unsecured creditors." Seafort, 437 B.R. at 211 (B.A.P. 6th Cir. 2010) aff'd on other grounds, 669 F.3d 662 (6th Cir. 2012).